## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**CHRISTOPHER OGDEN,**      )
      )
      Plaintiff,      )
      )
      vs.      )      2:13cv406
      )      Electronic Filing
**ALL-STATE CAREER SCHOOL**      )
      )
      Defendant.      )

## <u>MEMORANDUM ORDER</u>

AND NOW this 23rd day of April, 2014, upon due consideration of the matters raised in defendant's motion to compel and plaintiff's opposition thereto, IT IS ORDERED that [27] defendant's motion be, and the same hereby is, granted in part and denied in part. The motion is granted to the extent it seeks full and complete discovery responses to Requests for Production No.s 1, 10, 17, 26-30.[1] Plaintiff is ordered to serve full and complete responses to these requests within twenty-one (21) days of the date of this Order. The motion is granted as to Requests for Production No.s 38 and 39 as follows: subject to the limitations set forth in Rule 26, shall (a) review all electronic communications made or affirmatively acknowledged by him on any social networking website during the period of alleged harassment/discrimination/retaliation (including all status updates, messages sent and received, wall comments, causes joined, groups joined, activity streams, blog entries, details, blurbs, comments and applications) and (b) produce to defendant a copy of all electronic communications belonging or attributable to him as a result of his affirmative actions which (1) discuss or relate to the underlying workplace conduct and/or (2) his emotional state of mind during and after the time of employment and any cause(s) attributable

---

[1] Plaintiff has not objected to and has represented that he "will supplement" his responses to such requests.

to that emotional state of mind.   In the alternative, plaintiff may elect to provide defendant with access to the social networking site(s) along with a summary of the information which he believes is within the scope of this authorized discovery.   Plaintiff shall produce this authorized discovery on or before May 23, 2014.   The motion is denied in all other aspects.   This ruling is without prejudice to defendant's right to pursue further discovery of social networking communications and documents in accordance with the boundaries of relevancy as authorized by Rule 26.

Defendant's Requests for Production No.s 38 and 39 seek to compel electronic communications and records far beyond the scope of discovery authorized by Rule 26.   Through these requests defendant seeks "[c]opies of all photographs or videos posted by Plaintiff, or anyone on his behalf, or any photographs in which Plaintiff has been 'tagged' on any 'social networking' website including but not limited to 'Twitter,' 'Facebook,' and/or 'MySpace' from August 3, 2011, through the time of trial" and "[c]opies of Plaintiff's complete profile on any 'social networking' website including but not limited to 'Twitter,' 'Facebook,' and/or 'MySpace' (including all updates, changes or modifications to Plaintiff's profile) and all status updates, messages, both sent and received, wall comments, causes joined, groups joined, activity streams, blog entries, details, blurbs, comments and applications for the period from August 3, 2011 through the time of trial."

Plaintiff's complaint sets forth claims for hostile work environment and disparate treatment based on reverse gender discrimination as well as retaliation, all in violation of Title VII. Defendant contends that (1) a plaintiff's Facebook records are discoverable when they are likely to contain information that could lead to the discovery of admissible evidence; (2) the terminology used by plaintiff when speaking and interacting with others on social media is evidence that may

2

defeat his sexual harassment claim by proving that he was not subjectively offended by the words and statements used by his female coworkers; and (3) plaintiff's Facebook records contain conversations and messages that plaintiff had with his former coworkers whom he now alleges subjected him to sexual harassment in the workplace.   Plaintiff has objected to these requests on the grounds that they are irrelevant and overly-burdensome.

Defendant correctly points out that courts have permitted discovery of Facebook records when it is reasonably calculated to lead to the discovery of admissible evidence.   As an example defendant references Thompson v. Autoliv ASP, Inc., et al., 2:09-CV-01375-PMP, 2012 WL 2342928 (D. Nev. June 20, 2012).   There, the plaintiff sought over $61,000,000 from the manufacturer of her vehicle's seatbelt system after suffering injuries resulting from a vehicular collision.   The consequences of plaintiff's injuries were alleged to be pervasive and included severe physical injuries, emotional distress and impaired quality of life.   The plaintiff was compelled to produce complete and un-redacted copies of her Facebook and other social networking accounts.   The court reasoned that because these accounts were illustrative of plaintiff's social activities, mental state, relationships, living arrangements and rehabilitative progress, they were relevant for discovery purposes.

But it is the nature of the claims and defenses and not merely the form of medium that define the bounds of relevancy and courts have declined to permit far-roving discovery into social media accounts where the inquest does not meet the basic tenants of Rule 26.   For example, in Mackelprang v. Fid. Nat. Title Agency of Nevada, Inc., et al., 2:06-CV-00788-JCM, 2007 WL 119149 (D. Nev. Jan. 9, 2007), a case involving claims for sexual harassment based on gender in violation of Title VII and pendant state law claims, the defendant's motion to compel all records

3

from the plaintiff's two Myspace accounts was denied and the plaintiff was compelled to produce only those communications which contained statements made by the plaintiff and witnesses relating to the subject matter of the case.

The defendant's motion raised a number of issues regarding the type of information that might be contained in the Myspace accounts. First, the defendant argued that the accounts contained evidence that the plaintiff was using the private messaging function to facilitate the same types of electronic and physical relationships she had characterized as sexual harassment in her complaint. The defendant contended that (1) this evidence was probative of whether the plaintiff was a willing participant who condoned and actively encouraged the alleged sexual communications with the alleged harassers and (2) none of the identified conduct actually offended the plaintiff.

The court swiftly rejected the defendant's contentions pursuant to the principles set forth in Federal Rule of Evidence 412, which generally provides that evidence offered to prove that any alleged victim engaged in other sexual behavior or to prove the alleged victim's sexual predisposition is inadmissible in any civil proceeding involving alleged sexual misconduct. Id. at *6 ("The courts applying Rule 412 have declined to recognize a sufficiently relevant connection between a plaintiff's non-work related sexual activity and the allegation that he or she was subjected to unwelcome and offensive sexual advancements in the workplace.").

On the issue of whether the requested discovery was relevant to disprove that the conduct underlying the complaint actually offended plaintiff, the court reasoned that

> [e]vidence that Plaintiff has subsequently engaged in sexually related email
> communications with other persons may arguably be more relevant to whether
> Plaintiff suffered emotional distress damages than would evidence of Plaintiff's

sexual behavior before the alleged harassment.   Notwithstanding this distinction, the Court finds that the probative value of such evidence does not substantially outweigh its unfair prejudicial effect to Plaintiff.   Again, the courts have generally drawn the line on permissible discovery in this area by permitting discovery of the plaintiff's work-related sexual conduct, but not permitting inquiry into plaintiff's private sexual conduct.   This distinction is based, in part, on the conclusion that *what a person views as acceptable or welcomed sexual activity or solicitation in his or her private life, may not be acceptable or welcomed from a fellow employee or a supervisor*.   Thus, while the plaintiff's non-work related sexual conduct or behavior may be relevant to some degree in regard to whether she suffered emotional distress damages, its probative value as to either liability or damages is not substantial enough to outweigh the unfair prejudice that its admission would cause.

Id. at *6 (emphasis added).

In contrast, the court in Mackelprang permitted limited inquiry into and production of electronic communications discussing the conduct underlying the complaint and potential alternative causes for the plaintiff's claimed emotional distress.   The defendant had posited that the plaintiff's Myspace accounts contained statements by the plaintiff and potential witnesses about the subject matter of the case which presumably could constitute admissions or be used to impeach the witnesses' testimony.   It also alleged that the accounts contained information that the plaintiff's alleged severe emotional distress was caused by factors other than the alleged sexual harassment.

The court upheld the defendant's inquiry into private communications that pertained to workplace conduct occurring during the timeframe the plaintiff was employed by the defendant. It also ruled that the defendant was entitled to discover information relevant to the plaintiff's alleged emotional distress and her mental condition, which she had placed at issue in the case.[2]

---

[2]  Mackelprang's complaint alleged that she had attempted suicide and that the attempt was a direct result of the defendant's wrongful conduct.   The court opined that it was possible that the plaintiff

The court observed that the proper method for obtaining such information was to serve limited requests for production, such as requests to produce all private messages from the plaintiff's Myspace accounts that contained information regarding the plaintiff's sexual harassment allegations or which discussed her alleged emotional distress and the cause(s) thereof.   Id. at *8.

Nevertheless, the court held that the defendant was not entitled to unfettered access to the Myspace accounts.   The court reasoned that discovery beyond these areas in the form of the release of all private messages on the accounts would permit the defendant "to cast too wide a net for any information that may be relevant and discoverable."   In other words, such an inquiry would permit the defendant to obtain "irrelevant information, including possibly sexually explicit or sexually promiscuous email communications between [the plaintiff] and third persons, which are not relevant, admissible or discoverable."   Id. at *7.

Other courts have recognized that Rule 412's limitations extend to various forms of discovery seeking to elicit information falling within its prohibitions.   See Macklin v. Mendenhall, 257 F.R.D. 596 (E.D. Cal. 2009) (the restrictions reflected in Rule 412 extend to discovery seeking to elicit information from a plaintiff about sexual conduct, history, intentions and/or desires outside the workplace in question).   The pertinent section of the Committee Notes provides:

> In order not to undermine the rationale of Rule 412 . . . courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality.   Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes

might have made discoverable statements in personal email messages regarding her suicide attempt or the causes of her past or contemporaneous emotional distress which would be relevant to assessing the credibility of her claimed emotional distress.   Accordingly, the defendant was entitled to production of such information if it existed.

> a showing that the evidence sought to be discovered would be relevant under the
> facts and theories of the particular case, and cannot be obtained except through
> discovery.   In an action for sexual harassment, for instance, while some evidence
> of the alleged victim's sexual behavior and/or predisposition in the workplace may
> perhaps be relevant, non-workplace conduct will usually be irrelevant.

Notes of Advisory Committee on proposed 1994 amendment, Fed. R. Evid. 412; Macklin, 257

F.R.D. 604.   And these courts have issued protective orders where a defendant seeks roving

discovery in such areas.   See Macklin, 257 F.R.D. at 601-03 (collecting and analyzing cases

issuing protective orders under Rule 26(c) where the information sought fell within the ambit of

Rule 412 and/or its underlying policy considerations); Barta v. City and County of Honolulu, 169

F.R.D. 132, 135 (D. Haw. 1996) (inquiry into the plaintiff's off-duty and outside the workplace

sexual activity, which did not involve conduct with any of the named defendants, barred under

Rule 26(c) because such conduct had no relevance to the sexual harassment claims or applicable

defenses, which included "welcomeness" or consent to the behavior as well as issues of causation

and damages).

    This court agrees with the position taken in Mackelprang.   Ordering plaintiff to permit

access to or produce complete copies of his social networking accounts would permit defendant to

cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be

irrelevant and non-discoverable.   Defendant is no more entitled to such unfettered access to

plaintiff's personal email and social networking communications than it is to rummage through the

desk drawers and closets in plaintiff's home.

    Defendant here does not seek direct evidence of plaintiff's sexual behavior and/or

predisposition, as crudely understood, outside of the workplace.   Rather, it seeks evidence of "the

terminology used by plaintiff when speaking and interacting with others" on the theory that such

evidence is probative of whether plaintiff was subjectively offended by the words and statements used by his female coworkers. But the harassment alleged encompasses sexual innuendo and banter in the workplace. And as noted above, the courts have viewed Rule 412 as an affirmative bar into seeking to disprove the impact of such conduct through evidence that the plaintiff has engaged in or tolerated similar conduct in other contexts. In other words, what a person views as acceptable or welcomed in other aspects of his or her private life is not probative of what that individual finds to be acceptable or welcomed in the workplace from a fellow employee or supervisor. Mackelprang, 2007 WL 119149 at *6.

It follows that defendant only is entitled to limited discovery of plaintiff's electronic communications. Subject to the limitations set forth in Rule 26, plaintiff has an affirmative duty to (a) review all electronic communications made or affirmatively acknowledged by him on any social networking website during the period of alleged harassment/discrimination/retaliation (including all status updates, messages sent and received, wall comments, causes joined, groups joined, activity streams, blog entries, details, blurbs, comments and applications) and (b) produce to defendant a copy of all electronic communications belonging or attributable to him as a result of his affirmative actions which (1) discuss or relate to the underlying workplace conduct and/or (2) his emotional state of mind during and after the time of employment and any cause(s) attributable to that emotional state of mind. In the alternative, plaintiff may elect to provide defendant with access to the social networking site(s) along with a summary of the information which he believes

is within the scope of this authorized discovery.[3]   Defendant's motion to compel has been granted

to permit this limited inquiry.


                                          s/ David Stewart Cercone
                                          David Stewart Cercone
                                          United States District Judge



cc:     Erik M. Yurkovich, Esquire
        Douglas G. Smith, Esquire
        Cory E. Ridenour, Esquire

        (*Via CM/ECF Electronic Mail*)

---

[3] Of course, plaintiff had a duty to preserve all evidence that existed in this format from the time
he reasonably anticipated the commencement of litigation against defendant.   See Hohider v.
United Parcel Serv., Inc., 257 F.R.D. 80 (W.D. Pa. 2009) ("A duty to preserve evidence is an
'affirmative obligation,' which arises 'when the party in possession of the evidence knows that
litigation by the party seeking the evidence is pending or probable and the party in possession of
the evidence can foresee the harm or prejudice that would be caused to the party seeking the
evidence if the evidence were to be discarded.'") (citing Kounelis v. Sherrer, 529 F. Supp.2d 503,
518 (D.N.J. 2008)).